UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tara Brown,

    Plaintiff,                                    Case No. 1:18cv785

    v.                                                Judge Michael R. Barrett

Abubakar Atiq Durrani, *et al.*,

    Defendants.

---

Dawn Lee Ann Brown,

    Plaintiff,                                    Case No. 1:18cv786

    v.                                                Judge Michael R. Barrett

Abubakar Atiq Durrani, *et al.*,

    Defendants.

## **OPINION & ORDER**

This matter is before the Court upon the Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial filed by Defendants, Abubakar Atiq Durrani, M.D. ("Durrani") and Center for Advanced Spine Technologies, Inc. ("CAST"). (Doc. 79, 81).[1] Plaintiff has filed a Response (Doc. 82). Defendants did not file a reply. The parties filed the same pleadings in both of the above cases despite the Court's directive to file all pleadings related to the trial in these case in the Lead Case No. 1:18cv785. (Doc. 44, PAGEID 529).

---

[1]Defendant CAST was dismissed as a party from this case during trial. (Doc. 66). It is unclear why the motion is brought on its behalf. The Court will not address any of the claims against CAST.

**I.     BACKGROUND**

Plaintiffs are the former patients of Defendant Dr. Abubakar Atiq Durrani.  Durrani performed surgery on Dawn Lee Ann on December 27, 2010; and performed surgery on Tara on October 5, 2011.  Plaintiffs separately filed their Complaints in this Court on November 13, 2018.  (Doc. 1).  The cases were consolidated for trial.  (Doc. 44).  Following an eight-day trial, the jury found in favor of both Plaintiffs on their negligence claims against Durrani. (Doc. 71, PAGEID 1139; Doc. 72, PAGEID 1154).  The jury awarded Tara $50,300.00 in economic damages, $1.3 million in non-economic damages, $5.5 million in punitive damages. (Doc. 71, PAGEID 1145-46, 1150).  The jury awarded Dawn Lee Ann $40,100.00 in economic damages, $400,000.00 in non-economic damages, and $5.5 million in punitive damages. (Doc. 72, PAGEID 1160-61, 1165).

**II.    ANALYSIS**

  **A. Standard of Review**

   **1. Renewed Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure 50(a) allows a party to bring a motion for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2).[2]  If the district court denies the motion and the case is submitted to the jury, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed.R.Civ.P. 50(b).  "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but

---

[2]Defendants made an oral Rule 50(a) motion before the case was submitted to the jury, which was denied.  (Doc. 67).

one conclusion in favor of the moving party." *Barnes v. Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005).

### 2. Motion for New Trial

Federal Rule of Civil Procedure 59(a) provides that a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massilon, Ohio*, 78 F.3d. 1041, 1045-46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

Having set forth the applicable standards, the Court now turns to the arguments made in Defendants' motion.

### B. Statute of repose

Defendants argue that Plaintiffs' claims are barred by Ohio's statute of repose, which provides: "[n]o action upon a medical ... claim shall be commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the medical ... claim." Ohio Rev. Code § 2305.113(C)(1). This Court previously ruled—based on decisions from within this district—that the statute of repose was tolled when Durrani fled the United States pursuant to Ohio Revised Code § 2305.15(A). (Doc. 40, PAGEID 499). After this Court ruled, the Ohio Supreme Court confirmed that "by its plain language, R.C. 2305.15(A) tolls the medical-claim statute of repose, R.C. 2305.113(C), and therefore the statute of repose does not bar the filing of a claim during the defendant's

3

absence." *Elliot v. Durrani*, 171 Ohio St. 3d 213, 213, 216 N.E.3d 641, 642 (Ohio 2022). Because less than four years elapsed between Plaintiffs' December 27, 2010 and October 5, 2011 surgeries and Durrani's November 2013 flight, the statute of repose does not time-bar Plaintiffs' medical claims against Durrani. Therefore, Defendants' Motion is DENIED on this basis.

### C. Caps on non-economic and punitive damages

Defendants argue that this Court must apply Ohio's statutory caps on non-economic and punitive damages.

Pursuant to Ohio Revised Code § 2323.43(A)(2), the amount of damages available in a medical-malpractice action for non-economic loss is limited to the greater of $250,000.00 or an amount that is equal to three times the economic loss, but with a maximum of $350,000.00 for each plaintiff or a maximum of $500,000.00 for each occurrence.[3] However, where a plaintiff has suffered "permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system," the limit is raised to $500,000 for each plaintiff or $1,000,000 for each occurrence. Ohio Rev. Code § 2323.43(A)(3)(a). This type of injury is commonly known as a "catastrophic injury." *Potts v. Durrani*, 229 N.E.3d 792, 806 (Ohio Ct. App. 2023).

---

[3]The statute provides:

> Except as otherwise provided in division (A)(3) of this section, the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a civil action under this section to recover damages for injury, death, or loss to person or property shall not exceed the greater of two hundred fifty thousand dollars or an amount that is equal to three times the plaintiff's economic loss, as determined by the trier of fact, to a maximum of three hundred fifty thousand dollars for each plaintiff or a maximum of five hundred thousand dollars for each occurrence.

Ohio Rev. Code § 2323.43(A)(2).

4

Here, the jury specifically found that Plaintiffs' non-economic losses were "the result of permanent and substantial physical deformity, loss of use of limb, or loss of a bodily organ system." (Doc. 71, PAGEID 1147; Doc. 72, PAGEID 1162). Plaintiffs agree that Tara's $1,300,000 award for non-economic damages is limited to $500,000.00. (Doc. 82, PAGEID 1349). Plaintiffs maintain that Dawn Lee Ann's $400,000 award should not be reduced because it falls within the $500,000 limit on damages for catastrophic injury.

The Court concludes that there was sufficient evidence to submit the issue of whether Plaintiffs suffered "permanent and substantial physical deformity" to the jury. *Accord Setters v. Durrani*, 164 N.E.3d 1159, 1171 (Ohio Ct. App. 2020) (concluding that there was sufficient evidence to submit the issue of "permanent and substantial physical deformity" to the jury where treating doctors and experts testified that the plaintiff's spinal anatomy changed as a result of the surgeries); *Adams v. Durrani*, 183 N.E.3d 560, 574 (Ohio Ct. App, 2022) (concluding that permanent physical changes made to plaintiff's spine and the restriction of movement in her neck provided sufficient evidence for the jury to find that she suffered a "permanent and substantial physical deformity"). The Court will not disturb the factual findings of the jury. Therefore, the Court will only reduce Tara's $1,300,000 award for non-economic damages to $500,000.00 pursuant to Ohio Revised Code § 2323.43(A)(3)(a). Dawn Lee Ann's $400,000 award will not be reduced.

Ohio also limits a punitive damages award against "a small employer or individual" to "the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten percent of the employer's or individual's net worth when the tort was committed up to a maximum of three hundred fifty thousand dollars." Ohio

5

Rev. Code § 2315.21(D)(2)(b).[4]  However, it is the defendant's burden to establish his net worth at the time of the tort.  *Swartz v. Di Carlo*, No. 1:12CV3112, 2019 WL 168324, at *2 (N.D. Ohio Jan. 11, 2019) (citing *Caraman v. Bailey*, No. 94986, 2011 WL 346298, *1 (Ohio Ct. App. Feb. 3, 2011).  As such, Ohio courts will not disturb an award of punitive damages where no evidence of the defendant's net worth was presented at trial.  *See*, *e.g.*, *Doepker v. Willo Sec., Inc.*, 2008 WL 1850970, *6 (Ohio Ct. App. April 7, 2008).  Because Defendants failed to establish that the $350,000 cap applies, the Court will not reduce the amount of punitive damages pursuant to Ohio Revised Code § 2315.21(D)(2)(b).

Therefore, Defendants' Motion is GRANTED to the extent that Tara's $1,300,000 award for non-economic damages is reduced to $500,000.00 pursuant to Ohio Revised Code § 2323.43(A)(3)(a); but the Motion is DENIED regarding further reductions in the amount of damages awarded by the jury to Plaintiffs.

**D. <u>Set off based on settlement</u>**

Plaintiffs previously filed claims in state court against UC Health and West Chester Hospital arising from the surgeries in this case. *Tara Brown v. Durrani*, Hamilton County Common Pleas No. A 1505777; *Dawn Brown v. Durrani*, Hamilton County Common Pleas No. A1706435.  Plaintiffs settled these claims.  Defendants maintain that they are entitled to a setoff from Plaintiffs' settlement with the hospital defendants pursuant to Ohio Revised Code § 2307.28, which provides that when a release is given to one of two or

---

[4]The statute provides: "If the defendant is a small employer or individual, the court shall not enter judgment for punitive or exemplary damages in excess of the lesser of two times the amount of the compensatory damages awarded to the plaintiff from the defendant or ten per cent of the employer's or individual's net worth when the tort was committed up to a maximum of three hundred fifty thousand dollars, as determined pursuant to division (B)(2) or (3) of this section."  Ohio Rev. Code § 2315.21(D)(2)(b).

more persons "for the same injury or loss to person," the release "reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it . . ." Ohio Rev. Code § 2307.28(A).[5]

Plaintiffs argue that the statute does not apply because Durrani and the hospital defendants are not joint tortfeasors. The Ohio First District Court of Appeals has rejected this argument in another medical-malpractice lawsuit brought against these same defendants:

> We agree that [negligent credentialling and negligence] are distinct theories of liability. However, Ms. McCann has suffered a single, combined injury arising from appellants' malpractice and the hospital defendants' alleged negligence. And the setoff statute's focus is on the injury, not the theory of liability. *See* R.C. 2307.28 ("When a release * * * is given in good faith to one of two or more persons for the same injury or loss * * *."). "Joint tortfeasors" are "[t]wo or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." Black's Law Dictionary 1794 (11th Ed.2019). There is no doubt that the alleged

---

[5]The statute provides in full:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the same injury or loss to person or property or the same wrongful death, both of the following apply:

(A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact.

Ohio Rev. Code § 2307.28. There is a "narrow legislative exception" which prevents an intentional tortfeasor from benefitting from the setoff. *McCann v. Durrani*, 227 N.E.3d 471, 483 (Ohio Ct. App. 2023) (citing *Adams v. Durrani*, 183 N.E.3d 560, 575 (Ohio Ct. App. 2022). However, Plaintiffs did not pursue any intentional tort claims against Defendants at trial.

7

conduct of the hospital defendants and conduct for which appellants were found liable both "contributed to" Ms. McCann's injury. Thus, they are joint tortfeasors.

*McCann v. Durrani*, 2023-Ohio-3953, ¶ 60, 227 N.E.3d 471, 484-85 (Ohio Ct. App. 2023). Similarly, in this case the alleged negligent credentialling by the hospital defendants and Durrani's malpractice "contributed to" Plaintiffs' injury. Because the hospital defendants and Durrani are joint tortfeasors, Durrani is entitled to a set off based on the settlement with West Chester Hospital and UC Health.[6] Therefore, Defendants' Motion is GRANTED on this basis.

Because setoff is appropriate, Plaintiffs shall submit the amounts they received from the settlement agreement with West Chester Hospital and UC Health so that the Court can independently verify the amounts received to determine an appropriate amount for setoff. *Accord Potts v. Durrani*, 229 N.E.3d 792, 805 (Ohio Ct. App. 2023).

### E. Consolidating claims for trial

Defendants maintain that the Court erred by setting these two Plaintiffs' claims for trial together because the two cases do not involve common questions of law or fact. Defendants claim they were prejudiced by having the cases consolidated.

Federal Rule of Civil Procedure 42(a) permits consolidation of actions involving common questions of law or fact. Fed. R. Civ. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . join for hearing or trial any or all

---

[6]The Court notes that Defendants would not be entitled a set off for any amount West Chester Hospital and UC Health defendants paid to settle punitive damages. *Atwood v. UC Health*, Case No. 1:16CV593, 2024 WL 4171173, at *2 (S.D. Ohio June 17, 2024). However, by virtue of the Court's involvement in the settlement with West Chester Hospital and UC Health, the Court has access to the confidential Master Settlement Agreement for *in camera* review. Based upon a review of that document, the Court concludes that the amounts paid to Plaintiffs under the settlement agreement were not punitive damages but are considered damages for personal physical injury or sickness and reimbursement of medical expenses.

8

matters at issue in the actions."); *see also Cantrell v. GAF Corp.*, 999 F.2d 1007,1011 (6th Cir. 1993) (explaining "[w]hether cases involving the same factual and legal questions should be consolidated for trial is a matter within the discretion of the trial court."). In deciding whether to consolidate claims, a court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Id.* (quoting *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985)).

Both cases involved the same claim for negligence against the same doctor. Counsel for both cases are the same. The legal issues in both cases were the same. Before the cases were consolidated, Defendants filed nearly identical motions for summary judgment in both cases on the same day. (No. 1:18cv785, Doc. 20; No. 1:18cv786, Doc. 20). In preparation for trial, Defendants filed motions *in limine* which made no differentiation between the two plaintiffs. At trial, similar factual issues were presented and the expert witnesses for the two cases overlapped. As this Court noted in its order consolidating the two cases for trial, it was difficult to schedule these expert witnesses to testify at trial. (Doc. 44, PAGEID 528). Moreover, these two cases represent only two of the approximately twenty plaintiffs who have negligence claims pending against Durrani in this Court. Consolidating the trials saved time and expense to all concerned.

Defendants complain that by consolidating the two different cases for trial, half of the trial constituted "other acts" evidence which would have been inadmissible under

9

Federal Rule of Evidence 404 in an individual trial. However, the Court specifically instructed the jury:

> Although there are two Plaintiffs in this action, it does not follow from that fact alone that if one Plaintiff is entitled to recover, the other Plaintiff is entitled to recover. Defendants are entitled to a fair consideration as to each Plaintiff's claim, just as each Plaintiff is entitled to a fair consideration of that Plaintiff's claims against Defendants. Furthermore, all instructions I give you govern the case as to each individual Plaintiff.
>
> From time to time, I shall refer to Christopher Atwood and Jennifer Hickey collectively as "Plaintiffs." Therefore, while the instructions will collectively refer to "Plaintiffs," your analysis must be to each individual Plaintiff and their individual claims.

(Doc. 74, PAGEID 1182). The jury's interrogatory answers confirm that the jury differentiated between each of the individual patients. Not only did the jury award different amounts to each Plaintiff (Doc. 71, PAGEID 1145-1146; Doc. 72, PAGEID 1160-1161) but the jury indicated different bases to support a finding of negligence (Doc. 71, PAGEID 1141-1142; Doc. 72, PAGEID 1156-1157). The jury's individualized verdicts belie any argument regarding prejudice. Defendants are not entitled to a new trial on this basis. *Accord Jones v. Durrani*, 2024 WL 2106140, *6 (Ohio Ct. App. May 10, 2024) (trial court did not abuse its discretion under Ohio R. Civ. P. 42 when joining the instant cases for trial).

Therefore, Defendants' Motion is DENIED on this basis.

### F. Durrani's indictment and flight

Defendants argue that Durrani was denied a fair trial because the Court informed the jury of Durrani's criminal indictment and his subsequent flight to Pakistan. Defendants argue that it was error for the Court to instruct the jury to draw adverse inferences based on Durrani's absence.

10

A jury verdict cannot be vacated based on the erroneous admission of evidence or improper jury instructions unless the testimony's admission or improper jury instructions "amounted to more than harmless error." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 479 (6th Cir. 2013) (citing *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (applying the harmless error standard to the improper admission of evidence); *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir.1994) ("An erroneous [jury] instruction, unless harmless, requires a new trial.")); *see also E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074-75 (6th Cir. 2015) (explaining that a court should not grant a new trial for an erroneous jury instruction "where the error is harmless."). An erroneous instruction or an improper admission of evidence requires reversal when the court "lacks a 'fair assurance' that the outcome of a trial was not affected by [the] error." *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 480 (6th Cir. 2013) (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), overruled on other grounds by *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)).

During the final instructions to the jury, the Court explained that when evaluating the testimony of witnesses, the jury could consider the following:

> Under our system of criminal justice, Dr. Durrani is presumed innocent unless and until a criminal jury would unanimously find him guilty. Therefore, you are not to consider the pending charges for any purpose in this case.
>
> As you know, Dr. Durrani was not physically present in court, nor did he submit video testimony as to Tara Brown or Dawn Leeann Brown's treatment. While his actions before and as a result of the Indictment are not for your consideration, there is a different instruction as to his absence and non-participation in this case. Dr. Durrani has voluntarily left the jurisdiction, removing himself from Plaintiffs' ability to subpoena him to trial.
>
> The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may

> appear to have some knowledge of the matters in issue at this trial. Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case. However, when a party, such as Dr. Durrani, has direct evidence or testimony within its control that the party failed to produce, that failure may give rise to an inference that the evidence or testimony is unfavorable to that party. As I explained earlier, "inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

(Doc. 74, PAGEID 1194).

In another medical malpractice case brought against Durrani in state court, the trial court gave the following instruction to the jury:

> You are allowed to consider as part of your deliberation the fact that Dr. Durrani did not attend the trial and testify to specific facts about this case in his defense. ***And you may make whatever inference and conclusions you choose to from that fact.***

*Hounchell v. Durrani*, 221 N.E.3d 1020, 1035 (Ohio Ct. App. 2023) (emphasis in original). The defendants challenged this instruction on appeal. The Ohio First District Court of Appeals explained that while counsel may comment on a defendant's failure to attend trial, a court may not ask the trier of fact to draw inferences based on it. *Id*. (citing *Pierce v. Durrani*, 35 N.E.3d 594, 600 (Ct. App. 2015) (holding that counsel's comments about Durrani's absence were generally made in response to arguments by Durrani's counsel and in the context of not being able to cross-examine Durrani, and that they were, for the most part, a fair commentary on the evidence)). Therefore, the appeals court found that it was error for the trial court to give the instruction, which went beyond recognizing that Durrani was absent for trial. 221 N.E.3d at 1036. The appeals court explained its rationale:

> By giving the jury the ability to draw any inference or conclusion, the jury was permitted to draw both impermissible and negative inferences. The conclusions allowed by the instruction, but prohibited by law, would include the inference that Durrani was absent from trial because he had been

12

> negligent in his treatment of Hounchell or an assumption of liability based on racial prejudice against Arab-Americans. In other words, it allowed the jury to infer that Durrani was absent because of a consciousness of guilt or because of implicit biases against those of Pakistani descent, both of which are impermissible.

*Id*. As part of its harmless error analysis, the court explained:

> while, standing on its own, the instruction inviting the jury to draw any inference from Durrani's absence at trial might have had less impact, on this record we find that the instruction compounded the resulting error from the erroneous evidentiary rulings and was therefore prejudicial. The improper attacks on Durrani's credibility by these evidentiary rulings encouraged the jury, when considering the provided jury instruction on Durrani's absence, to draw impermissible or negative inferences regarding Durrani's absence from trial, including that he was absent because of a consciousness of guilt.

*Id*. (citation omitted). Therefore, the appeals court found that the defendants were entitled to a new trial. *Id*. at 1037. Subsequent decisions reviewing the identical instruction have reached the same conclusion. *See Greene v. Durrani*, 2023 WL 5662778, * 3 (Ohio Ct. App. Sept. 1, 2023) ("After reviewing the alleged errors at trial, we conclude that the license revocation points, aspects of the collage, and the jury instruction concerning Dr. Durrani's absence discussed above all represented errors."); *Stratman v. Durrani*, 2023 WL 5600304, *3 (Ohio Ct. App. Aug. 30, 2023) ("Because the jury instruction in this case is identical to the erroneous one in *Hounchell*, we hold that its inclusion by the trial court here constituted an abuse of discretion.").

In a more recent decision, Ohio's First District Court of Appeals was presented with slightly different absent-defendant jury instruction. The instruction was as follows:

> The defendant, Dr. Durrani, did not attend these proceedings in person. He is represented here by counsel. You shall not speculate on why he is not present or consider his absence for any purpose except as instructed below.
>
> Dr. Durrani has voluntarily left the jurisdiction removing himself from plaintiff's ability to subpoena him to trial. When a party such as Dr. Durrani has relevant evidence or testimony within his or her control, and the party

13

> failed to produce that relevant evidence or testimony, that failure gives rise to an inference that the evidence or testimony is unfavorable to that party.

*Jones v. Durrani*, 2024 WL 2106140, *6 (Ohio Ct. App. May 10, 2024). The court explained that this instruction was "more limited" than the one given in the *Hounchell* case because "[i]t permits only the inference that the testimony or evidence in Dr. Durrani's possession would be unfavorable to him." *Id*. Nevertheless, the court found that the trial court erred in giving this instruction because the instruction required this inference instead of "simply permitting the inference to be made if the jury so chooses." *Id*. at *7. In addition, the instruction was not limited "to only that evidence which Dr. Durrani would 'naturally' produce, *i.e.*, evidence that was not cumulative or inferior to other evidence already produced." *Id*.

Despite this error, the court concluded that there was "no indication on the face of the record that the erroneous instruction was so prejudicial as to require reversal." *Id*. at *9. The court explained that a review of the jury instructions as a whole did not indicate that the jury was probably misled by the erroneous instruction. *Id*. at *8. The court pointed to the instruction on evidence and inferences which stated:

> To infer or to make an inference is to reach a reasonable conclusion of facts which *you may, but are not required to*, make from other facts which you find have been established by direct evidence. *Whether an inference is made rests entirely on you*.

*Id*. (emphasis in original).

Here, unlike in *Hounchell*, the Court did not instruct the jury that they that "may make whatever inference and conclusions you choose to" from the fact that Durrani did not attend the trial. Instead, the instruction was more limited like the one in *Jones*, in that the jury was told that Durrani's failure to produce relevant evidence or testimony which

14

was within his control, "gives rise to an inference that the evidence or testimony is unfavorable" to him. (Doc. 104, PAGEID 36202). Moreover, the jury was also told elsewhere in the instructions:

> While you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

(Doc. 74, PAGEID 1186). Therefore, any inferences to be drawn by the jury were permissible and not required. In addition, the jury was told that those inferences were not to be based on Durrani's Indictment, but only based on "his absence and non-participation in this case." (Doc. 74, PAGEID 1194).

However, even if the instruction was improper, any error was harmless. None of the evidentiary errors found in *Hounchell*—which stemmed from showing the jury a "collage" video of Durrani's deposition testimony—are present here. *See* 221 N.E.3d at 1031 (explaining that there was no evidentiary basis for admitting evidence through the "collage" video that Durrani's medical licenses were revoked and that his hospital privileges were suspended). In the present case, the "collage" video was not shown to the jury so the same evidentiary errors were not present. Therefore, Defendants' Motion is DENIED on this basis.

### G. Dr. Wilkey

Defendants argue that Plaintiffs' expert witness, Dr. Wilkey, should not have been permitted to testify because when this case went to trial, he was not practicing medicine in a clinical setting.

15

When this case went to trial in January of 2022, then-existing Ohio law required experts testifying in medical-malpractice suits to devote half their professional time to active clinical practice "at the time the testimony is offered at trial." *Frank v. Good Samaritan Hosp. of Cincinnati, Ohio*, Case No. 23-3275, 2023 WL 6623635, at *1 (6th Cir. Oct. 11, 2023) (quoting *Johnson v. Abdullah*, 187 N.E.3d 463, 468 (Ohio 2021) and citing Ohio Evid. R. 601(B)(5)(b) (2021 ed.) (requiring the proposed expert to devote "at least one-half of his or her provisional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.")). However, Ohio Rule of Evidence 601(B)(5)(b) was amended in July of 2023 in order to clarify that an expert witness must be in active clinical practice at "either the time the negligent act is alleged to have occurred or the date the claim accrued." Therefore, "[u]nder the revised rule, medical experts are qualified to testify if they met the clinical practice requirements at the time of the alleged medical liability but not at the time of testifying at trial." *Welch v. United States*, No. 24-3367, 2025 WL 374248, at *4 (6th Cir. Feb. 3, 2025). There is nothing in the record showing that Dr. Wilkey did not meet the clinical practice requirements when Durrani performed surgery on Dawn Lee Ann on December 27, 2010 or performed surgery on Tara on October 5, 2011. Therefore, Defendants' Motion is DENIED on this basis.

### III. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** that Defendants Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technology's Motion for Judgment as a Matter of Law, or in the Alternative, for Remittitur or a New Trial (Doc. 79, 81) is

**GRANTED in PART and DENIED in PART**.  Accordingly, the Judgment in favor of Tara Brown entered in this case (Docs. 71, 77) shall be amended as follows:

$$\begin{aligned}
& \$ \phantom{0,0}50{,}300.00 \text{ (economic)} \\
& \$ \phantom{0,}500{,}000.00 \text{ (non-economic damages)} \\
+\ & \underline{\$ 5{,}500{,}000.00 \text{ (punitive damages)}} \\
& \$ 6{,}050{,}300.00 \text{ (total judgment)}
\end{aligned}$$

Within **ten (10) days** of entry of this Order, Plaintiffs shall submit the amounts they received based on the settlement agreement with West Chester Hospital and UC Health so that the Court can independently verify the amounts received to determine an appropriate amount for setoff against the judgments entered in this case on February 8, 2022.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Michael R. Barrett*
　　　　　　　　　　　　　　　　　　　　　　　　JUDGE MICHAEL R. BARRETT